# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**FIRST COMMUNITY BANK**                                   **CIVIL ACTION**

**VERSUS**

**COMMONWEALTH LAND TITLE**              NO.: 3:13-cv-00699-BAJ-RLB
**INSURANCE COMPANY**

## RULING, ORDER & JUDGMENT

Before the Court are cross-motions for summary judgment and various related requests. (*See* Doc. 3 (First Community Bank's Motion for Summary Judgment); Doc. 8 (Commonwealth Land Title Insurance Company's Motion for Summary Judgment); *see also* 5 (Commonwealth Land Title Insurance Company's *first* Motion for Oral Argument); Doc. 9 (Commonwealth Land Title Insurance Company's *second* Motion for Oral Argument)). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Oral argument is not necessary. Consistent with this Order, the Court determines that Plaintiff First Community Bank's Motion for Summary Judgment shall be granted in part; Defendant Commonwealth Land Title Insurance Company's Motion for Summary Judgment shall likewise be granted in part; and final judgment shall be entered in favor of Plaintiff First Community Bank, and against Defendant Commonwealth Land Title Insurance Company.

## I.  BACKGROUND

### a. Procedural History

On September 3, 2013, First Community Bank ("FCB") sued its insurer Commonwealth Land Title Insurance Company ("Commonwealth") in Louisiana state court, seeking recovery pursuant to the terms of a Title Insurance Policy ("the Title Policy"). (Doc. 1-3). On October 23, 2013, Commonwealth removed FCB's Petition to this Court pursuant to 28 U.S.C. § 1441, asserting diversity jurisdiction. (Doc. 1). FCB later sought, and was granted, leave to amend its Petition to allege additional facts and grounds for relief under the Title Policy. (Doc. 15; Doc. 17; Doc. 18).

On November 22, 2013, FCB filed its Motion for Summary Judgment. (Doc. 3). Commonwealth responded first by filing an opposition, (Doc. 4), then by filing its own Motion for Summary Judgment (Doc. 8). FCB filed its opposition to Commonwealth's Motion for Summary Judgment on February 6, 2014. (Doc. 11).

Additionally, each side has been allowed to file reply memoranda in support of their respective motions for summary judgment, (Doc. 24; Doc. 25), as well as supplemental briefing regarding the effect of FCB's Amended Complaint on the parties' respective motions for summary judgment, (Doc. 21; Doc. 22).

### b. Factual Backdrop

At the root of the dispute between FCB and Commonwealth is a certain piece of real property located in St. Tammany Parish, near the intersection of Howze

Beach Road and West End Boulevard, and bordered on the south by Lake Pontchartrain. (*See* Doc. 4-2 at p. 2 (Plan of Survey by J. J. Krebs & Sons, Inc., dated Feb. 1, 1994); Doc. 4-11 at p. 2 (Perimeter Survey by Krebs, LaSalle, LeMeiux Consultants Inc., dated August 28, 1996); Doc. 3-2 at p. 19 (Perimeter Survey by R.W. Krebs. L.L.C., dated Sept. 28, 2009)). The history and ownership of this property over the last two decades might best be described as Byzantine, involving various players including FCB and Commonwealth. However, because this history is dispositive of the parties' respective motions for summary judgment, the Court describes the relevant portions in detail here.

The evidence in the record establishes—and the Court finds—the following: Robert L. Torres, Sr. ("Torres") is the President and Senior Manager of Tammany Holding Company, LLC ("Tammany Holding") and Tammany Dirt Company, LLC ("Tammany Dirt") (collectively "Tammany"). (Doc. 3-6 at p. 14; Doc. 3-3 at p. 5). By Credit Deed dated May 31, 1996,[1] Torres purchased certain real property in St. Tammany Parish, Louisiana from Garrett Properties Limited Partnership ("Garrett"). (Doc. 3-5 at p. 1). This property consisted of four Tracts—A, B, C, and D—generally bordered by U.S. Interstate Highway 10 to the west, and Lake Pontchartrain to the south. (*See id.* at p. 6; Doc. 4-2 at p. 2). More specifically, Tract A comprised 2,861.86 acres; Tract B comprised 27.32 acres; Tract C comprised

---

[1] This Credit Deed is filed and recorded in St. Tammany Parish as Instrument #998734. (Doc. 3-5 at p. 1).

26.28 acres; and Tract D comprised 16.98 acres. (Doc. 3-5 at pp. 6–9; Doc. 4-2 at p. 2).

As would be expected, the Credit Deed included metes and bounds measurements for each tract. (*See id.* at pp. 6–9). For the Court's purposes, the description of Tract D is particularly significant. The Credit Deed described Tract D as:

> A certain piece or portion of ground situated in the State of Louisiana, Parish of St. Tammany, portion of Sections 3, 4, Township 10 South, Range 14 East and portion of Sections 33 and 34, Township 9 South, Range 14 East, designated as Tract D and more fully described as follows.
>
> Commence at the intersection of the easterly right of way line of Interstate 10 Service Road and the easterly right of way line of Howze Beach Road, thence along said easterly line S26° 23' 33"W a distance of 995.26' to a point, the point of beginning. Measure thence from the point of beginning S63° 36' 27"E a distance of 719.53' to a point on the westerly line of Lot S-O; **thence along said westerly line S24° 03' 35"W a distance of 1035.67'; thence N69° 02' 02"W a distance of 5.87'; thence S86° 36' 18"W a distance of 59.01;** thence N05° 32' 42"E a distance of 177.40'; thence N45° 50' 03"W a distance of 100.00'; thence N69° 12' 15"W a distance of 410.00'; thence S28° 47' 45"W a distance of 91.29'; thence N68° 32' 19"W a distance of 67.82'; thence S18° 28' 51"W a distance of 74.26'; thence N68° 32' 19"W a distance of 44.70'; thence S18° 28' 51"W a distance of 254.33'; thence N62° 13' 15"W a distance of 116.56'; thence N26° 23' 33"E a distance of 741.03'; thence S63° 36' 27"E a distance of 50.00'; thence N26° 23' 33"E a distance of 590.85' to a point, the point of beginning.
>
> Said Tract D contains 14.40 acres inside levee and 2.58 acres outside levee.

4

All as more fully shown on plan of survey by J. J. Krebs & Sons, Inc. dated February 1, 1994.[2]

(Doc. 3-5 at pp. 8–9 (emphasis added)[3]; *see also* Doc. 4-2).

On August 30, 1996—just three months after purchasing the property from Garrett—Torres transferred portions to Tammany Holding by way of Cash Sale.[4] Specifically, Torres transferred Tract A, Tract B, and Tract D, "less and except . . . [certain] described properties." (Doc. 3-6 at p. 9; *see id.* at pp. 5–10). In particular, the "except[ed] . . . properties" included a *new* Tract, labeled "Parcel 4," consisting of 141.73 acres carved out from Tracts A and D. Specifically, Parcel 4 is described as:

> A CERTAIN PIECE OR PORTION OF GROUND, situated in the State of LOUISIANA, Parish of ST. TAMMANY, portion of Sections 33 and 34 T9S, R14E, Sections 3 and 4, T10S, R14E, designated as Parcel 4 and more fully described as follows:
>
> Commence from the corner common to Sections 23, 24, 25 and 26, T9S, R14E, and measure S42° 57' 58"W a distance of 11,188.35 feet to the northwest corner of Parcel 4 and the point of beginning. Measure

---

[2] Inexplicably, FCB *failed* to include a copy of the February 1, 1994 Plan of Survey among the exhibits supporting its Motion for Summary Judgment, despite its express incorporation into the May 31 Credit Deed. Given that this dispute involves (redrawn) property lines and whether and when property was transferred between parties, such evidence is critical to the Court's evaluation of the parties' respective claims. Fortunately, Commonwealth provided the February 1, 1994 Plan of Survey with its response to FCB's summary judgment motion. (Doc. 4-2). FCB does not dispute the accuracy of the February 1, 1994 Survey, nor does it dispute that the Survey provided by Commonwealth *is* the Survey incorporated by reference in the May 31 Credit Deed. (*See generally* Doc. 24 (FCB's Reply Memorandum Supporting Summary Judgment)).

[3] In this section, the Court emphasizes uniquely identifiable portions of the metes and bounds descriptions that are consistent across each of the various deeds of transfer, mortgage documents, and insurance policies involved in this dispute. In doing so, the Court endeavors to illustrate as clearly as possible that the property in question: (1) remains vested in Torres; (2) is encumbered by two multiple indebtedness mortgages; and (3) is also the property that is the subject of the Title Policy issued by Commonwealth to FCB.

[4] This Cash Sale is filed and recorded in St. Tammany Parish as Instrument #1013853. (Doc. 3-6 at p. 1).

thence from the point of beginning S48° 11' 27"E a distance of 1000.00 feet thence S41° 48' 33"W a distance of 657.72 feet to a point of curvature; thence in a southwesterly direction along the arc of a curve to the right having a radius of 1810.00 feet, an arc length of 1429.92 feet, a chord bearing of S64° 26' 28"W, a chord length of 1393.02 feet to a point of tangency; thence S87° 4' 24"W a distance of 411.84 feet; thence S24° 03' 35"W a distance of 2252.75 feet; thence N59° 40' 51"W a distance of 257.25 feet; thence N59° 58' 02"W a distance of 200.02 feet; thence N 58° 49' 17"W a distance of 200.00 feet; thence N69° 02' 02"W a distance [of] 97.03 feet; thence N24° 03' 35"E a distance of 1072.88 feet to a point of a line separating T9S, R14E from T10S, R14E; thence N89° 01' 25"W along said line a distance of 108.70 feet; **thence S24° 03' 35"W a distance of 1035.67 feet; thence N69° 02' 02"W a distance of 5.87 feet; thence S86° 36' 18"W a distance of 59.01 feet;** thence N04° 47' 15"E a distance of 177.40 feet; thence N45° 50' 03"W a distance of 100.00 feet; thence N69° 12' 15"W a distance of 410.00 feet; thence 28° 47' 45"W a distance of 91.29 feet; thence N68° 32' 19"W a distance of 67.82 feet; thence S18° 28' 51"W a distance of 74.26 feet; thence N68° 32' 19"W a distance of 44.70 feet; thence S18° 28' 51"W a distance of 254.33 feet; thence N62° 13' 15"W a distance [of] 66.56 feet to a point on the easterly right of way line of Howze Beach Road; thence N26° 23' 33"E along said easterly line a distance of 2328.35 feet; thence N58° 54' 58"E a distance of 142.52 feet to a point on the easterly right of way line of a Service Road of Interstate Highway 10; thence in northeasterly direction along said easterly line and along the arc of a curve to the right having a radius of 693.76 feet, an arc length of 736.25 feet, a chord bearing of N56° 40' 16"E, a chord length of 702.18 feet; thence N87° 04' 24"E alond [sic] said line a distance of 1101.72 feet; thence in a northeasterly direction along said line and along the arc of a curve to the left having a radius of 810.00 feet, an arc length of 639.91 feet, a chord bearing of N64° 25' 28"E, a chord length of 623.40 feet; thence N41° 48' 33"E along said line a distance of 657.73 feet tot [sic] he [sic] point of beginning.

Parcel 4 contains 141.73 acres.

All as more fully shown on plan by Krebs, LaSalle, LeMeiux Consultants, Inc., dated August 21, 1996.[5]

---

5 Here again, FCB *failed* to produce a copy of the August 21, 1996 Perimeter Survey, despite its express incorporation into the August 30 Cash Sale. As before, the Survey has been provided by Commonwealth, with its response to FCB's summary judgment motion. (Doc. 4-11).

(*Id.* at pp. 9–10 (emphasis added); Doc. 4-11).[6]

Some time passed. Then, on June 13, 2008, Torres granted a multiple indebtedness mortgage in favor of Central Progressive Bank, which secured a promissory note in the principal amount of $3,000,000.00 (the "Central Progressive Mortgage"). (Doc. 24-1 at pp. 1–2). The Central Progressive Mortgage encumbered a significant portion of Parcel 4, and was filed and recorded in St. Tammany Parish on August 1, 2008, at Instrument No. 1694115. (*See id.* at pp. 1–3). Specifically, the Central Progressive Mortgage encumbered property described as:

> A CERTAIN PIECE OR PORTION OF GROUND situated in the State of Louisiana, Parish of St. Tammany, portion of Section 3, 4, 33, 34, Township 9 South, Range 14 East, designated as a 12.8325 Acre Site and more fully described as follows:
>
> [COMMENCE FROM THE SECTION CORNER COMMON TO SECTIONS 23, 24, 25 AND 26, TOWNSHIP 9 SOUTH, RANGE 14 EAST, THENCE S43° 28' 04"W A DISTANCE OF 14709.14 FEET TO A POINT ON THE SOUTHERLY RIGHT OF WAY LINE OF WEST END BOULEVARD, ALSO BEING THE POINT OF BEGINNING. MEASURE THENCE FROM THE POINT OF BEGINNING N89° 01'

---

The Court notes that there is a 7-day discrepancy between the August *21*, 1996 Krebs, LaSalle, LeMeiux Perimeter Survey referenced in the Cash Sale, and the August *28*, 1996 Krebs, LaSalle, LeMeiux Perimeter Survey provided by Commonwealth. However, because the August 28 Survey provided by Commonwealth corresponds exactly to Parcel 4's metes and bounds measurements detailed in the Cash Sale, *and* because FCB does not challenge the accuracy or legitimacy of the August 28 Survey, the Court finds that this discrepancy is the result of a mere typographical error, *either* in the Cash Sale, *or* the Plan itself. (*See also* Doc. 4-13 (Affidavit of Robert C. Graham attesting to the legitimacy of "the 1994 survey")). Accordingly, the Court finds that the August 28 Survey produced by Commonwealth *is* the August 21 Survey referenced in the Cash Sale.

[6] The properties "except[ed]" from the August 30 Cash Sale also include the 26.28 acre Tract C. (Doc. 3-6 at p. 9). The express "except[ion]" of Tract C from the Cash Sale is a redundancy, however, insofar as no portion of Tract C was included among the Tracts transferred from Torres to Tammany. (*See id.* at pp. 5–8).

7

25"W A DISTANCE OF 114.27 FEET; **THENCE S24° 03' 35"W A DISTANCE OF 1035.67 FEET; THENCE N68° 58' 24"W A DISTANCE OF 5.87 FEET; THENCE S86° 36' 15"W A DISTANCE OF 59.01 FEET;** THENCE N05° 32' 42"E A DISTANCE OF 177.40 FEET; THENCE N45° 50' 03"W A DISTANCE OF 100.00 FEET; THENCE N69° 12' 15"W A DISTANCE OF 378.07 FEET; THENCE N26° 23' 33"E A DISTANCE OF 623.39 FEET; THENCE S63° 36' 27"E A DISTANCE OF 95.00 FEET; THENCE N26° 23' 33"E A DISTANCE OF 125.00 FEET; THENCE N63° 36' 27"W A DISTANCE OF 112.01 FEET; THENCE N26° 23' 33"E A DISTANCE OF 236.88 FEET TO A POINT ON THE SOUTHERLY RIGHT OF WAY LINE OF WEST END BOULEVARD; MEASURE THENCE ALONG SAID SOUTHERLY LINE S63° 36' 27" E A DISTANCE OF 597.37 FEET; THENCE ALONG THE ARC OF A CURVE TO THE RIGHT HAVING A RADIUS OF 100.00 FEET, AN ARC LENGTH OF 80.93 FEET AND A CHORD BEARING OF S40° 25' 34" TO A POINT, THE POINT OF BEGINNING.

SAID PORTION OF GROUND CONTAINS 12.8325 ACRES.]

Being the same property acquired by Robert L. Torres, Sr. from Garrett Properties Limited Partnership, per act dated May 31, 1996, recorded at Instrument #998734 of the official records of St. Tammany Parish, Louisiana.

(*See id.* at pp. 2–3 (emphasis added)).

Still more time passed. Then, on October 20, 2009, Torres granted a *second* multiple indebtedness mortgage—this time in favor of FCB (the "FCB Mortgage"). (Doc. 3-2 at p. 1). The FCB Mortgage was in the amount of $10,000,000.00, and was filed and recorded in St. Tammany Parish on December 23, 2009, at Instrument No. 1753428. As did the Central Progressive Mortgage, the FCB Mortgage encumbered a significant (although smaller) portion of Parcel 4. (*See id.* at pp. 1–3). Specifically, the FCB Mortgage encumbered property described as:

A CERTAIN PIECE OR PORTION OF GROUND situated in the State of Louisiana, Parish of St. Tammany, portion of Sections 33 & 34, T9S-R14E, designated as 6.6315 acres and more fully described as follows:

Commence from the corner common to Sections 23, 24, 25 & 26, T9S-R14E and measure S 45 degrees 58' 02" W a distance of 14,890.33 feet to a point on the westerly right way line of West End Boulevard; thence along said westerly line, S 63 degrees 36' 27" E a distance of 303.20 feet to a point, the Point of Beginning.

Measure thence from the Point of Beginning, along the westerly right of way line of West End Boulevard, S 63 degrees 36' 27" E, a distance of 294.17 feet to a point; thence continue along said westerly line, along the arc of a curve to the right, having a radius of 100.00 feet, an arc length of 80.92 feet, a chord bearing of S 40' 25" 29'" E and a chord distance of 78.73 feet to a point; thence N 89 degrees 01' 25" W a distance of 114.27 feet to a point; **thence S 24 degrees 03' 35" W a distance of 1035.67 feet to a point on the boundary agreement line between Eden Isles, Inc. and the State of Louisiana; thence along said line N 69 degrees 02' 02" W, a distance of 5.87 feet to a point; thence continue along said line 86 degrees 36' 18" W, a distance of 59.01 feet to a point;** thence continue along said line N 05 degrees 32' 42" E, a distance of 177.40 feet to a point; thence continue along said line N 45 degrees 50' 03" W, a distance of 100.00 feet to a point; thence continue along said line, N 69 degrees 12' 15" W, a distance of 90.51 feet to a point; thence N 26 degrees 23' 33" E, a distance of 957.23 feet to a point on the westerly right of way line of West End Boulevard, the Point of Beginning.

Said portion of ground contains 288,867.79 square feet or 6.6315 acres.

(*Id.* at p. 2 (emphasis added)). The FCB Mortgage included a Perimeter Survey illustrating the encumbered property, produced by R.W. Krebs, L.L.C., and dated September 28, 2009. (*Id.* at p. 19).

9

Two more years passed. Then, on December 18, 2011, FCB lent Tammany $2,249,240.63.[7] (Doc. 3-3). Tammany's note was secured by the October 20, 2009 FCB Mortgage which, to repeat: (1) was granted by *Torres* in favor of FCB; and (2) encumbered *Torres's* property—specifically, the 6.6315 acres of Parcel 4 described above. (Doc. 3-3 at p. 2 (Tammany's Promissory Note describing "COLLATERAL" as "1ST MULTIPLE INDEBTEDNESS MTG DATED 10/20/09 ON VACANT LAND LOCATED AT WEST END BLVD & LAKE PONTCHARTRAIN"); *see* Doc. 3-2 at p. 1).

Five days later, on December 23, 2009, Commonwealth issued FCB the Title Policy that is the basis of FCB's cause of action. The Title Policy's limit is $2,500,000.00 and insures, among other things (and subject to certain exceptions not at issue here): (1) the FCB Mortgage is a valid and perfected first priority mortgage; and (2) the property encumbered by the FCB Mortgage is vested in Torres. (Doc. 3-1 at pp. 1–2 (Loan Policy of Title Insurance No. LA0223-81-09-1-3677-2010.8130718-79845450)). The Title Policy includes the same description of the 6.6315 acres encumbered by the FCB Mortgage as is contained in the October 20, 2009 FCB Mortgage document. (*Id.* at p. 6).

---

[7]  On May 24, 2012, the original principal amount of the December 18, 2011 loan was adjusted downward to $2,192,042.61, pursuant to a Change in Terms Agreement. (Doc. 3-3 at p. 3).

Ultimately, Tammany defaulted on its debt to FCB.[8] (Doc. 3-4 at p. 2 (Affidavit of Patrick Hoffman)). However, rather than pursue foreclosure on the encumbered property, FCB demanded that Commonwealth cover Tammany's debt pursuant to the terms of the Title Policy. (Id.). FCB asserted that it was "unable to initiate foreclosure proceedings after [Tammany's] default [because] Robert L. Torres does not own the mortgaged property." (See id.). Then, when Tammany failed to pay FCB's claim within 60-days of proof of loss, FCB filed suit in state court. (Id.). Commonwealth denied FCB's claim on October 15, 2013, (id.), and subsequently removed FCB's action to this Court, (Doc. 1).

Against this backdrop, the Court weighs the parties' respective motions for summary judgment. (See Doc. 3 (FCB's Motion for Summary Judgment); Doc. 8 (Commonwealth's Motion for Summary Judgment)).

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "This burden is not satisfied with some metaphysical doubt as to the

---

[8] As of November 15, 2013, Tammany owed FCB principal in the amount of $2,111,443.62, *plus*: $166,978.05 secondary interest; $22,482.39 in late charges; and $337.24446 per diem interest. (Doc. 3-4 at p. 2).

11

material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation marks and citations omitted). In determining whether the movant is entitled to summary judgment, the Court "view[s] facts in the light most favorable to the non-movant and draw[s] all reasonable inferences in her favor." *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

In sum, summary judgment is appropriate if, "after adequate time for discovery and upon motion, [the non-moving party] fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. LAW AND DISCUSSION

### a. Whether FCB is entitled to relief under the Title Policy's terms

FCB asserts two grounds in support of its claim that it is entitled to judgment (and compensation) pursuant to the terms of the Title Policy. First, FCB argues that it is "entitled to summary judgment for the full insured amount" because the Title Policy insures "that merchantable title to the Property is vested in Torres" and, in fact, "Tammany . . . [is] the owner of the Property." (Doc. 3-15 at pp. 3–4). Alternatively, FCB argues that it is entitled to judgment under the terms of the Title Policy because "FCB's Mortgage is not a first priority mortgage," insofar as

"Torres granted a [prior] mortgage in favor of Central Progressive Bank encumbering the Property which primes FCB's mortgage." (Doc. 24 at p. 1).

Commonwealth takes the opposite tact, asserting that it is entitled to summary judgment because "[t]he clear and plain language of the transactional documents in this matter demonstrates that there is **no** title defect that would constitute a loss under FCB's title insurance policy." (Doc. 8 at p. 1). Specifically, Commonwealth asserts that the evidence "clearly and unambiguously demonstrate[s] that the insured property" remains vested in Torres and, therefore, "FCB [retains] the right to foreclose on the property, and . . . has not suffered loss or damage under the Policy." (*Id.* at pp. 1–2). Regarding FCB's claim that its mortgage is *not* a first priority mortgage in light of the Central Progressive Bank Mortgage, Commonwealth asserts that FCB cannot prevail because "FCB has not made a claim under the Policy on th[is] issue, and th[is] new purported claim falls outside the scope of the pleadings." (Doc. 8-1 at p.3 n.11).

While the facts in this matter are convoluted, the law is not. In Louisiana, "[c]ontracts have the effect of law for the parties and the interpretation of a contract is the determination of the common intent of the parties." *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 2012-2055 (La. 3/19/13), 112 So. 3d 187, 192, *reh'g denied* (May 3, 2013) (quotation marks and alterations omitted); *see also* La. Civ. Code Ann. art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the

13

parties' intent."). Here, it is quite clear from the face of the August 30, 1996 Cash Sale—as supplemented by the February 1994 and August 1996 land surveys—that the parties intended Torres to remain the owner of the property described as Parcel 4, *and* that Parcel 4 incorporates the 6.6315 acre tract encumbered by the FCB mortgage that is the subject of the Title Policy. (*See* Doc. 3-6 at p. 9 (August 30, 1996 Cash Sale); *see id.* at pp. 5–10; Doc. 4-2 (February 1, 1994 Plan of Survey by J. J. Krebs & Sons, Inc.); Doc. 4-11 (August 28, 1996 Perimeter Survey by Krebs, LaSalle, LeMieux Consultants, Inc.); Doc. 3-1 at pp. 2, 6 (Title Policy)). Any ambiguity on this point is dispelled by the supplemental "Sketch Map"— commissioned from J.V. Burkes & Associates, Inc. and submitted by Commonwealth in support of its Motion for Summary Judgment—which illustrates the location of the property in dispute as it relates to Parcel 4. (Doc. 4-10 at p. 2 (appended as "Exhibit A")). Accordingly, FCB's Motion for Summary Judgment is *denied* to the extent it claims relief because "[the encumbered property was] transferred to Tammany Holding by Act of Cash Sale dated August 30, 1996." (Doc. 3-15 at p. 12). By the same token, Commonwealth's Motion for Summary Judgment is *granted* to the extent it asserts that the property at issue remains vested in Torres—as guaranteed by the terms of the Title Policy—and, therefore, FCB "has not suffered a loss under the Policy."[9] (Doc. 8-1 at p. 11; *see* Doc. 3-1 at pp. 2, 6).

---

[9] FCB strains to convince the Court that under the *only* reasonable interpretation of the August 1996 Cash Sale, the property at issue was transferred from Torres to Tammany. (*See* Doc. 3-15 at pp. 7–9). Further, FCB argues that even if title to the disputed property remains vested in Torres, the creation of Parcel 4 from Tracts A and D constitutes an illegal "subdivision . . . of the Property,"

14

This is not the end of the inquiry, however, because FCB asserts an alternative basis for recovery under the Title Policy: specifically, FCB argues that its "Mortgage is not a first priority mortgage" because Torres granted a prior mortgage encumbering the Property at issue in favor of Central Progressive Bank. (Doc. 24 at p. 1).[10] Here, the Court agrees with FCB. The unequivocal evidence in the record establishes: (1) Torres granted a multiple indebtedness mortgage

thereby calling "merchantable title . . . [into] question." (See Doc. 24 at p. 3). The Court is not persuaded by either of these arguments. First, as indicated above, the terms of the Cash Sale unambiguously "except[ed]" Parcel 4 from the transfer between Torres and Tammany. See La. Civ. Code Ann. art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."); see also Clovelly Oil Co., 112 So. 3d at 192. Further, even if the Court assumes that the creation of Parcel 4 from Tracts A and D constitutes an illegal subdivision, the time for raising this challenge has long-passed. See La. Rev. Stat. Ann. § 9:5625 ("All actions [that may be brought based upon a violation of a subdivision regulation] must be brought within five years from the first act constituting the commission of the violation." (emphasis added)).

[10] Commonwealth asserts that the Court should disregard this basis for relief because it was raised "for the first time" in FCB's reply memorandum. (See Doc. 8-1 at p. 3). Of course, it is well-established at the Court of Appeals that "[a]rguments raised for the first time in a reply brief are generally waived." Jones v. Cain, 600 F.3d 527, 541 (5th Cir. 2010) (emphasis added). It is another matter whether this rule applies with equal weight at the District Court. Further, even at the Court of Appeals, this rule is far from jurisdictional, and the U.S. Fifth Circuit and others have recognized a court's discretion to overlook a party's failure to raise an issue, and to undertake a sua sponte analysis. Id. at 541 & n.12.

Here, the Court determines that consideration of FCB's argument that it is entitled to relief because its Mortgage is primed by the Central Progressive Bank Mortgage is appropriate based on the following factors: first, from the beginning, FCB has asserted that "[t]he Title Policy insured that the Mortgage was a valid and perfected first priority Mortgage" and, thus, Commonwealth was put on notice regarding the possibility of this claim. (Doc. 1-3 at ¶ 7). Second, Commonwealth concedes that "it insured that [FCB's] Mortgage was a first priority mortgage," (Doc. 4-1 at ¶ 10). Third, FCB has been allowed to amend its complaint to specifically assert its lack of "first priority mortgage" as a basis for relief under the Title Policy. (Doc. 18 at ¶¶ 40–49). Finally, despite having ample opportunity to produce evidence and authority countering FCB's request for summary judgment on this ground, Commonwealth offers neither. Indeed, Commonwealth tacitly concedes that FCB prevails on this ground when—in response to the Court's Order "to file supplemental briefing regarding what effect, if any, Plaintiff's First Supplemental and Amended Complaint may have on the pending cross-Motions for Summary Judgment," (Doc. 20 at p. 1)—it states "in light of [FCB's] First Amended Complaint, Commonwealth's motion has become a motion for partial summary judgment [limited to the issue of whether title to the disputed property remains vested in Torres]." (See Doc. 21 at p. 21).

15

encumbering a portion of Parcel 4 in favor of Central Progressive Bank, which was recorded on August 1, 2008, (Doc. 24-1 at pp. 1–2); (2) sixteen months later, Torres granted a *second* multiple indebtedness mortgage on a subset of the *same* property in favor of FCB, which was recorded on December 23, 2009, (Doc. 3-2 at p. 1); and (3) the Title Policy insures against (a) "[t]he lack of priority of the lien of the insured Mortgage upon the Title over any other lien or encumbrance," *and* (b) "[t]he lack of priority of the lien of the insured Mortgage upon the Title." (Doc. 3-1 at p. 1; *see also* Doc. 4-1 at ¶ 10 ("Commonwealth admits that it insured that the Mortgage was a first priority mortgage . . . .")). Under Louisiana law, a mortgage which is recorded first has priority over subsequently recorded mortgages. *See* La. Civ. Code Ann. art. 3307 ("The mortgagee is preferred to the unsecured creditors of the mortgagor and to others whose rights become effective after the mortgage becomes effective as to them."); *see also Quality Fin. Co. of Donaldsonville v. Bourque*, 315 So. 2d 656, 658–59 (La. 1975); *Fed. Trust Bank v. Sheppard*, 13-429 (La. App. 5 Cir. 4/9/14), 140 So. 3d 86, 91–92. Thus, FCB's Mortgage is primed by Central Progressive Bank's mortgage encumbering the same property, and FCB is entitled to relief on its claim that its Mortgage is not a first priority mortgage pursuant to the express terms of the Title Policy.

### b. Relief

The only remaining issues are: (1) the extent of damages, and (2) whether to assess penalties against Commonwealth for failure to pay FCB's claim. FCB

asserts that it is owed damages in the amount of $2,500,000.00—the maximum amount allowed under the terms of the Title Policy, (Doc. 24 at p. 5)—and, further, that under Louisiana law it is entitled to penalties and attorney's fees due to Commonwealth's denial of its claim, (Doc. 3 at pp. 9–12). Commonwealth counters that "FCB has not proved the amount of its loss that would be compensable under the Policy," (Doc. 4 at p. 10), and that FCB has also failed to show that "Commonwealth's denial of its claim was arbitrary or capricious" as required for assessment of penalties and fees under the Louisiana Insurance Code, (*id.* at p. 13).

## 1. Damages

First, the Court addresses the issue of damages. In pertinent part, the Title Policy provides:

> (a) The extent of [Commonwealth's] liability . . . for loss or damage under this policy shall not exceed the least of
>
> (i) the Amount of Insurance,
> (ii) the indebtedness,
> (iii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(Doc. 3-1 at p. 9). In other words, FCB is entitled to the *lesser* of (i) the Title Policy limits; (ii) the amount of the debt owed FCB; or (iii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by the Title Policy. (*See id.*).

There is no dispute that the Title Policy's limit is $2,500,000.00. (Doc. 3-1 at p. 1). Further, FCB has produced uncontested evidence establishing that as of

17

September 15, 2014 the debt owed equals $2,403,426.38, consisting of $2,111,443.62 principal *plus* $166,978.05 secondary interest *plus* $22,482.39 late charges *plus* $102,522.32 ($337.24446 per diem interest x 304 days). (*See* Doc. 3-4 at p. 2; *see also* Doc. 4 at p. 11 (acknowledging that FCB has produced evidence establishing "the full amount of the secured debt")). Finally, according to FCB's uncontested evidence, the fair market value of the property in dispute is $3,105,000.00. (Doc. 24-2 at p. 1 (Market Valuation dated March 11, 2013). In this case, "the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy" is *equivalent* to the property's fair market value because the Title is not merchantable in light of Central Progressive Bank's first priority mortgage. *See Young v. Stevens*, 209 So. 2d 25, 27 (La. 1967) ("Property has a merchantable title when it can be readily sold or mortgaged in the ordinary course of business by reasonable persons familiar with the facts and questions involved. One should not be made to accept a title tendered as good, valid and binding unless it is entirely legal from every point of view." (citations and alterations omitted)).

In sum, under the terms of the Title Policy, FCB is entitled to recover (ii) $2,403,426.38 *plus* $337.24446 per diem interest from September 15, 2014 until judgment is satisfied, the *lesser* of (i) $2,500,000.00 *and* (iii) $3,105,000.00. (*See* Doc. 3-1 at p. 9).

## 2.  Penalties

Finally, the Court takes up the issue of whether to assess penalties.  Under Louisiana law, an insurance claimant must prove that denial of coverage was "arbitrary" and/or "capricious" before it may recover penalties and/or attorney's fees from an insurer.  *See* La. R.S. 22:658; La. R.S. 22:1973.  Further, "where the insurer has legitimate doubts about coverage, the insurer has the right to litigate these questionable claims without being subjected to damages and penalties."  *Calogero v. Safeway Ins. Co. of Louisiana*, 1999-1625 (La. 1/19/00), 753 So. 2d 170, 173.  Here, the Court finds that Commonwealth's October 15, 2013 denial of FCB's claim was neither "arbitrary" nor "capricious" because at the time of denial, FCB's claim was limited to its assertion that title to the encumbered property was vested in Tammany, *not* Torres.  As explained above, Commonwealth was correct to deny this "questionable claim[]," even at the risk of litigation. *See id.*  In short, because FCB failed to advance its prevailing claim that Central Progressive Bank's first priority mortgage primed its own mortgage until *after* Commonwealth's denial, (*see* Doc. 6-2 at pp. 6–7 (FCB's Reply Memorandum dated December 23, 2013), the Court cannot say that Commonwealth's denial was arbitrary or capricious.  Accordingly, the Court denies FCB's request for assessment of penalties and attorney's fees.

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Commonwealth's **MOTION[S] FOR ORAL ARGUMENT (Doc. 5; Doc. 9)** are **DENIED.**

**IT IS FURTHER ORDERED** that FCB's **MOTION FOR SUMMARY JUDGMENT (Doc. 3)** is **GRANTED IN PART.** Specifically, FCB's motion is granted to the extent that it seeks relief pursuant to the terms of the Title Policy because FCB's Mortgage is primed by Central Progressive Bank's first priority mortgage.

**IT IS FURTHER ORDERED** that Commonwealth's **CROSS-MOTION FOR SUMMARY JUDGMENT (Doc. 8)** is **GRANTED IN PART.** Specifically, Commonwealth's motion is granted to the extent that it seeks dismissal of FCB's claim that it is entitled to relief pursuant to the terms of the Title Policy because Torres is not the owner of the disputed property.

**IT IS FURTHER ORDERED** that **JUDGMENT BE ENTERED** in favor of Plaintiff FCB and against Defendant Commonwealth in the amount of **$2,403,426.38,** *PLUS* **$337.24446 per diem interest FROM September 15, 2014 UNTIL judgment is satisfied.**

Baton Rouge, Louisiana, this *19th* day of September, 2014.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

## EXHIBIT A

